FMC CORPORATION and Monsanto Company, Plaintiffs,

v.

UNITED STATES, Defendant,

Rotem Fertilizers Ltd., Defendant–Intervenor.

Court No. 92–04–00287.

United States Court of International Trade.

May 15, 1992.

Gibson, Dunn & Crutcher, Joseph H. Price and Thomas P. Simon, Washington, D.C., for plaintiffs FMC Corp. and Monsanto Co.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeffrey M. Telep, of counsel: Jeffery B. Denning, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendant.

Kaplan Russin & Vecchi, Dennis James, Jr. and Kathleen F. Patterson, Washington, D.C., for defendant-intervenor Rotem Fertilizers Ltd.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, FMC Corporation and Monsanto Company, have moved for a preliminary injunction to prevent the Government from liquidating any unliquidated entries of industrial phosphoric acid exported from Israel by defendant-intervenor Rotem Fertilizers Ltd. Rotem Fertilizers Ltd. is the corporate successor to Negev Phosphates, Ltd. ("Negev"), a party to the underlying

administrative proceeding. For ease of understanding, defendant-intervenor will be referred to in this opinion as Negev.

On May 1, 1992, plaintiffs filed a motion for a temporary restraining order and a motion for a preliminary injunction. The Court granted plaintiffs' motion for a temporary restraining order on May 1, 1992 and scheduled a hearing on plaintiffs' motion for a preliminary injunction which was held on May 11, 1992.

*Background*

On August 19, 1987, the Department of Commerce, International Trade Administration ("ITA"), published an antidumping duty order subjecting unliquidated entries of industrial phosphoric acid from Israel made on or after April 20, 1987 to possible assessment of antidumping duties. *Antidumping Duty Order; Industrial Phosphoric Acid From Israel,* 52 Fed.Reg. 31,-057 (1987).

On July 19, 1991, the ITA published the final results of its first and second administrative reviews of the order covering exports of industrial phosphoric acid from Israel. *Industrial Phosphoric Acid From Israel; Final Results of Antidumping Duty Administrative Reviews,* 56 Fed. Reg. 33,248 (1991). The ITA determined that the dumping margin for Negev Phosphates, Ltd. was zero for the periods April 20, 1987 through July 31, 1988, and August 1, 1988 through July 31, 1989.

On September 24, 1990, at the request of plaintiffs and defendant-intervenor Negev, the ITA initiated a third administrative review of the antidumping duty order for the period August 1, 1989 through July 31, 1990. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 55 Fed.Reg. 39,032 (1990).

During the course of the third administrative review, plaintiffs requested that the ITA determine whether Negev's home market sales were made at less than the cost of production ("COP") pursuant to 19 U.S.C. § 1677b(b) (1988).[1] In support of their request, plaintiffs submitted a 1986 report estimating Negev's cost of producing industrial phosphoric acid. Plaintiffs compared this report to home market sales data submitted by Negev during the review.

ITA rejected plaintiffs' request for a COP investigation. ITA found that plaintiffs' COP allegation was deficient because the study was based on three year old COP data which had not been updated with information from Negev's response. Plaintiffs requested the ITA to reconsider its decision not to conduct a COP investigation and to allow them to submit supplemental information in regard to their COP allegation. ITA refused.

ITA issued its preliminary determination for the third review finding that Negev's dumping margin was zero and announcing its intention to revoke the antidumping duty order with respect to Negev. *Industrial Phosphoric Acid From Israel; Preliminary Results of Antidumping Duty Administrative Review and Intent to Revoke in Part; Antidumping Duty Order,* 56 Fed.Reg. 67,059 (1991). The basis for the revocation would be that Negev had zero dumping margins for three consecutive reviews and Negev's written agreement to immediate suspension of liquidation of entries and reinstatement of the antidumping duty order if Negev resumed less-than-fair-value sales of industrial phosphoric acid. *Id.* at 67,060.

Plaintiffs submitted a prehearing brief where they renewed their request that the

---

1. 19 U.S.C. § 1677b(b) (1988) states:
 **(b) Sales at less than cost of production**
 Whenever the administering authority has reasonable grounds to believe or suspect that sales in the home market ... have been made at prices which represent less than the cost of producing the merchandise in question, it shall determine whether, in fact, such sales were made at less than the cost of producing the merchandise. If the administering au-

thority determines that sales made at less than the cost of production—
 (1) have been made over an extended period of time and in substantial quantities, and
 (2) are not at prices which permit recovery of all costs within a reasonable period of time in the normal course of trade
 such sales shall be disregarded in the determination of foreign market value.
 *See also* 19 C.F.R. § 353.51 (1991).

ITA conduct a COP investigation. Plaintiffs also submitted supplemental information supporting their request.

On March 23, 1992, the ITA issued the final results of the third administrative review. *Industrial Phosphoric Acid From Israel; Final Results of Antidumping Duty Administrative Review and Revocation in Part of the Antidumping Duty Order*, 57 Fed.Reg. 10,008 (1992). In its final results, the ITA explained its denial of plaintiffs' request for a COP investigation. *Id.* at 10,008–09 (Comment 1). Since the ITA had found zero dumping margins with respect to Negev for three consecutive reviews, the ITA revoked the antidumping duty order with respect to Negev for all unliquidated entries of industrial phosphoric acid made on or after August 1, 1990. *Id.* at 10,008.

On April 21, 1992, plaintiffs filed a summons and on April 29, 1992, a complaint, challenging the ITA's final determination in the third administrative review of industrial phosphoric acid from Israel and the partial revocation. The complaint alleges that the ITA applied a legally incorrect standard to determine whether to initiate a COP investigation, that the administrative record does not contain substantial evidence to support the ITA's decision not to conduct a COP investigation, and that the ITA's refusal to accept supplemental information regarding the allegation of sales at below cost denied plaintiffs their right to procedural due process.

*Discussion*

In order for a preliminary injunction to issue, plaintiffs must clearly demonstrate: (1) the threat of immediate irreparable harm; (2) the likelihood of success on the merits; (3) that the public interest is better served by issuing rather than denying the injunction; and (4) that the balance of hardships to the parties favors the plaintiffs. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983); *Timken Co. v. United States*, 11 CIT 504, 506, 666 F.Supp. 1558, 1559 (1987). "If any one of the requisite factors has not been established by plaintiffs, the motion for a preliminary injunction must be denied." *Trent Tube Div., Crucible Materials Corp. v. United States*, 14 CIT ——, ——, 744 F.Supp. 1177, 1179 (1990) *citing S.J. Stile Assocs. Ltd. v. Snyder*, 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981); *Budd Co. Wheel and Brake Div. v. United States*, 12 CIT 1020, 1023, 700 F.Supp. 35, 37 (1988).

Plaintiffs argue that if they prevail in this action, the ITA will be required to conduct a COP investigation which may lead to the finding of a dumping margin for Negev for the third administrative review. ITA will then be required to reinstate the antidumping duty order against Negev and will require the posting of cash deposits reflecting the dumping margin. Liquidation of Negev's future entries will be suspended until subsequent administrative reviews determine actual margins. Unless the ITA is enjoined, it will instruct the U.S. Customs Service to liquidate Negev's unliquidated entries and the opportunity to assess potential dumping duties will be lost on those entries even if the antidumping duty order is reinstated.

■ Liquidation of entries which are the subject of a challenged section 751 administrative review may constitute irreparable injury. *Zenith*, 710 F.2d at 810. In such a situation, generally only a one-year time period and a discrete number of entries are at issue. To allow the entries to be liquidated prior to the completion of the judicial challenge would eliminate the subject of the plaintiffs' only potential remedy. *Id.*

■ However, what is at issue in this case is more than just a challenge to an administrative review. Plaintiffs also challenge the partial revocation of the antidumping duty order. If plaintiffs win on the merits of this case, the antidumping duty order will be re-instated on Negev's future entries of industrial phosphoric acid. Plaintiffs' remedy will not disappear if entries are liquidated during the course of this proceeding.

In situations where some entries may be liquidated without additional duties but prospective relief as to future entries may

be available, this Court has refused to grant preliminary injunctions. *Trent Tube Div.,* 14 CIT at ——, 744 F.Supp. at 1179; *Budd Co.,* 12 CIT at 1023, 700 F.Supp. at 37; *Timken,* 11 CIT at 506–07, 666 F.Supp. at 1559–60; *Bomont Indus. v. United States,* 10 CIT 431, 435, 638 F.Supp. 1334, 1338 (1986); *American Spring Wire Corp. v. United States,* 7 CIT 2, 5, 578 F.Supp. 1405, 1407 (1984).

In *Timken,* the plaintiff challenged the ITA's affirmative determination excluding one foreign exporter from the scope of an antidumping finding. The Court, in *Timken,* in denying plaintiff's motion for a preliminary injunction, stated that

> [w]hile plaintiff may not be satisfied that a successful challenge will result only in prospective relief, it retains both its statutory right and a remedy which may be pursued. Some further affirmative showing on plaintiff's part as to irreparable injury is required.

11 CIT at 507, 666 F.Supp. at 1560.

Plaintiffs have failed to present any evidence that they will suffer immediate irreparable harm if this Court does not issue a preliminary injunction. While it is true that plaintiffs may suffer harm through continued liquidation of entries of Negev's industrial phosphoric acid, this potential harm is not irreparable because plaintiffs will still have the possibility of prospective relief in regard to future entries of Negev's industrial phosphoric acid if they are successful on the merits of their case.

 In addition, based on the evidence presented at this hearing, this Court is by no means certain that plaintiffs are likely to succeed on the merits. In determining whether to initiate a COP investigation, plaintiffs must present the ITA with a "specific and objective" basis for believing that sales below cost are occurring. *Al*

*Tech Specialty · Steel Corp. v. United States,* 6 CIT 245, 250, 575 F.Supp. 1277, 1282 (1983); *aff'd on other grounds,* 745 F.2d 632 (Fed.Cir.1984). Here plaintiffs' primary evidence of sales below cost consisted of a consultant's three-year old report which had not been updated with available current information. It was reasonable for the ITA to reject this report as a basis for initiating a COP investigation. Also, plaintiffs' supplemental submission of Negev's financial statement for all lines of business for the period of review was insufficient to require the ITA to initiate a COP investigation. ITA reasonably found that the financial statement did not constitute an accurate indication of Negev's home market sales of industrial phosphoric acid because such sales constituted only a small proportion of Negev's total sales. *See Industrial Phosphoric Acid From Israel; Final Results of Antidumping Duty Administrative Review and Revocation in Part of the Antidumping Duty Order,* 57 Fed.Reg. 10,008 (1992) (Comment 1). Finally, the ITA did not violate plaintiffs procedural due process rights by rejecting further submissions of supplemental information because such submissions were untimely pursuant to 19 C.F.R. § 353.-31(c)(1)(ii) (1991).[2]

Since plaintiffs have failed to meet the required showing of immediate irreparable harm, and since plaintiffs have failed to show they are likely to succeed on the merits, plaintiffs' motion for a preliminary injunction is denied.

---

**2.** 19 C.F.R. § 353.31(c)(1) states in pertinent part:

> (c) *Time limits for certain allegations.* (1) The Secretary will not consider any allegation of sales below the cost of production that is submitted by the petitioner ... later than:
> . . . .

(ii) In an administrative review under § 353.22(c) or (f), 120 days after the date of publication of the notice of initiation of the review, unless a relevant response is, in the Secretary's view, untimely or incomplete, in which case the Secretary will determine the time limit; . . . .